**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| DR. G. NEIL GARRETT, DDS, PC, ) <br> on behalf of itself and a class, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> PHARMALOGICAL, INC., ) <br> d/b/a MEDICAL DEVICE KING ) <br> and JOHN DOES 1-10, ) <br> ) <br> Defendants. ) | 12 CV 5652 <br><br> Honorable Judge Manning <br> Magistrate Judge Keys |

**FIRST AMENDED COMPLAINT – CLASS ACTION**

**MATTERS COMMON TO MULTIPLE COUNTS**

**INTRODUCTION**

1. Plaintiff Dr. G. Neil Garrett DDS, PC, brings this action to secure redress for the actions of defendant Pharmalogical, Inc. d/b/a Medical Device King in sending or causing the sending of unsolicited advertisements to telephone facsimile machines in violation of the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA"), the Illinois Consumer Fraud Act, 815 ILCS 505/2 ("ICFA"), and the common law.

2. The TCPA expressly prohibits unsolicited fax advertising. Unsolicited fax advertising damages the recipients. The recipient is deprived of its paper and ink or toner and the use of its fax machine. The recipient also wastes valuable time it would have spent on something else. Unsolicited faxes prevent fax machines from receiving and sending authorized faxes, cause wear and tear on fax machines, and require labor to attempt to identify the source and purpose of the unsolicited faxes.

## PARTIES

3. Plaintiff Dr. G. Neil Garrett DDS, PC, is an Illinois professional corporation with offices in Lake Villa, Illinois, where it maintains telephone facsimile equipment.

4. Defendant Pharmalogical, Inc., does business as Medical Device King at 425 Northern Blvd., Suite 28, Great Neck, NY, 11021.

5. Defendants John Does 1-10 are other natural or artificial persons that were involved in the sending of the facsimile advertisements described below. Plaintiff does not know who they are.

## JURISDICTION AND VENUE

6. This Court has jurisdiction under 28 U.S.C. §§1331 and 1367. *Brill v. Countrywide Home Loans, Inc.*, 427 F.3d 446 (7th Cir. 2005).

7. This Court also has jurisdiction under 28 U.S.C. §§1332(d) (Class Action Fairness Act). Defendant is of diverse citizenship to plaintiff. On information and belief, based on the economics of junk faxing, the number of class members exceeds 100. On information and belief, based on the economics of junk faxing and the apparent target audience of the faxes, the total amount in controversy, on a classwide basis, exceeds $5 million. (At $1500 per fax, this is satisfied if more than 3,334 faxes were sent; since at the typical rates charged for fax advertising, this would only cost $50 to $100, it makes little or no sense to send fewer faxes.)

8. Personal jurisdiction exists under 735 ILCS 5/2-209, in that defendant:

    a. Has committed tortious acts in Illinois by causing the transmission of unlawful communications into the state.

    b. Has transacted business in Illinois.

9.     Venue in this District is proper for the same reason.

## FACTS

10.    On July 8, 2011, plaintiff Dr. G. Neil Garrett DDS, PC, received the unsolicited fax advertisement attached as <u>Exhibit A</u> on its facsimile machine.

11.    On July 20, 2011, plaintiff Dr. G. Neil Garrett DDS, PC, received the unsolicited fax advertisement attached as <u>Exhibit B</u> on its facsimile machine.

12.    On August 1, 2011, plaintiff Dr. G. Neil Garrett DDS, PC, received the unsolicited fax advertisement attached as <u>Exhibit C</u> on its facsimile machine.

13.    On August 1, 2011, plaintiff Dr. G. Neil Garrett DDS, PC, received the unsolicited fax advertisement attached as <u>Exhibit D</u> on its facsimile machine.

14.    On August 15, 2011, plaintiff Dr. G. Neil Garrett DDS, PC, received the unsolicited fax advertisement attached as <u>Exhibit E</u> on its facsimile machine.

15.    On September 7, 2011, plaintiff Dr. G. Neil Garrett DDS, PC, received the unsolicited fax advertisement attached as <u>Exhibit F</u> on its facsimile machine.

16.    On September 19, 2011, plaintiff Dr. G. Neil Garrett DDS, PC, received the unsolicited fax advertisement attached as <u>Exhibit G</u> on its facsimile machine.

17.    On September 23, 2011, plaintiff Dr. G. Neil Garrett DDS, PC, received the unsolicited fax advertisement attached as <u>Exhibit H</u> on its facsimile machine.

18.    On October 17, 2011, plaintiff Dr. G. Neil Garrett DDS, PC, received the unsolicited fax advertisement attached as <u>Exhibit I</u> on its facsimile machine.

19.    On November 1, 2011, plaintiff Dr. G. Neil Garrett DDS, PC, received the unsolicited fax advertisement attached as <u>Exhibit J</u> on its facsimile machine.

20.    On November11, 2011, plaintiff Dr. G. Neil Garrett DDS, PC, received

the unsolicited fax advertisement attached as Exhibit K on its facsimile machine.

21. On November 22, 2011, plaintiff Dr. G. Neil Garrett DDS, PC, received the unsolicited fax advertisement attached as Exhibit L on its facsimile machine.

22. On December 6, 2011, plaintiff Dr. G. Neil Garrett DDS, PC, received the unsolicited fax advertisement attached as Exhibit M on its facsimile machine.

23. On December 12, 2011, plaintiff Dr. G. Neil Garrett DDS, PC, received the unsolicited fax advertisement attached as Exhibit N on its facsimile machine.

24. On December 14, 2011, plaintiff Dr. G. Neil Garrett DDS, PC, received the unsolicited fax advertisement attached as Exhibit O on its facsimile machine.

25. On January 3, 2012, plaintiff Dr. G. Neil Garrett DDS, PC, received the unsolicited fax advertisement attached as Exhibit P on its facsimile machine.

26. On January 3, 2012, plaintiff Dr. G. Neil Garrett DDS, PC, received the unsolicited fax advertisement attached as Exhibit Q on its facsimile machine.

27. On January 16, 2012, plaintiff Dr. G. Neil Garrett DDS, PC, received the unsolicited fax advertisement attached as Exhibit R on its facsimile machine.

28. On January 31, 2012, plaintiff Dr. G. Neil Garrett DDS, PC, received the unsolicited fax advertisement attached as Exhibit S on its facsimile machine.

29. On February 27, 2012, plaintiff Dr. G. Neil Garrett DDS, PC, received the unsolicited fax advertisement attached as Exhibit T on its facsimile machine.

30. On March 27, 2012, plaintiff Dr. G. Neil Garrett DDS, PC, received the unsolicited fax advertisement attached as Exhibit U on its facsimile machine.

31. On April 10, 2012, plaintiff Dr. G. Neil Garrett DDS, PC, received the unsolicited fax advertisement attached as Exhibit V on its facsimile machine.

32. On April 30, 2012, plaintiff Dr. G. Neil Garrett DDS, PC, received the unsolicited fax advertisement attached as <u>Exhibit W</u> on its facsimile machine.

33. On May 15, 2012, plaintiff Dr. G. Neil Garrett DDS, PC, received the unsolicited fax advertisement attached as <u>Exhibit X</u> on its facsimile machine.

34. On May 21, 2012, plaintiff Dr. G. Neil Garrett DDS, PC, received the unsolicited fax advertisement attached as <u>Exhibit Y</u> on its facsimile machine.

35. On June 5, 2012, plaintiff Dr. G. Neil Garrett DDS, PC, received the unsolicited fax advertisement attached as <u>Exhibit Z</u> on its facsimile machine.

36. On June 13, 2012, plaintiff Dr. G. Neil Garrett DDS, PC, received the unsolicited fax advertisement attached as <u>Exhibit AA</u> on its facsimile machine.

37. On June 25, 2012, plaintiff Dr. G. Neil Garrett DDS, PC, received the unsolicited fax advertisement attached as <u>Exhibit BB</u> on its facsimile machine.

38. On July 31, 2012, plaintiff Dr. G. Neil Garrett DDS, PC, received the unsolicited fax advertisement attached as <u>Exhibit CC</u> on its facsimile machine.

39. Discovery may reveal the transmission of additional faxes as well.

40. Defendant Pharmalogical, Inc. d/b/a Medical Device King is responsible for sending or causing the sending of the faxes.

41. Defendant Pharmalogical, Inc. d/b/a Medical Device King, as the entity whose products or services were advertised in the faxes, derived economic benefit from the sending of the faxes.

42. Defendant Pharmalogical, Inc. d/b/a Medical Device King either negligently or wilfully violated the rights of plaintiff and other recipients in sending the faxes.

43. Plaintiff had no prior relationship with defendant and had not authorized

the sending of fax advertisements to plaintiff.

44. The faxes have a "remove" number at the bottom that is associated with the mass broadcasting of advertising faxes.

45. On information and belief, the faxes attached hereto were sent as part of a mass broadcasting of faxes.

46. On information and belief, defendant has transmitted similar unsolicited fax advertisements to at least 40 other persons in Illinois.

47. There is no reasonable means for plaintiff or other recipients of defendant's unsolicited advertising faxes to avoid receiving illegal faxes. Fax machines must be left on and ready to receive the urgent communications authorized by their owners.

48. The faxes do not contain an "opt out" notice in the form required by 47 U.S.C. § 227.

## **COUNT I – TCPA**

49. Plaintiff incorporates ¶¶ 1-48.

50. The TCPA makes unlawful the "use of any telephone facsimile machine, computer or other device to send an unsolicited advertisement to a telephone facsimile machine ..." 47 U.S.C. §227(b)(1)(C).

51. The TCPA, 47 U.S.C. §227(b)(3), provides:

**Private right of action.**

**A person or entity may, if otherwise permitted by the laws or rules of court of a State, bring in an appropriate court of that State–**

> **(A)  an action based on a violation of this subsection or the regulations prescribed under this subsection to enjoin such violation,**

> **(B)  an action to recover for actual monetary loss from such a**

> violation, or to receive $500 in damages for each such violation, whichever is greater, or
>
> **(C) both such actions.**
>
> **If the Court finds that the defendant willfully or knowingly violated this subsection or the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under the subparagraph (B) of this paragraph.**

52. Plaintiff and each class member suffered damages as a result of receipt of the unsolicited faxes, in the form of paper and ink or toner consumed as a result. Furthermore, plaintiff's statutory right of privacy was invaded.

53. Plaintiff and each class member is entitled to statutory damages.

54. Defendant violated the TCPA even if its actions were only negligent.

55. Defendant should be enjoined from committing similar violations in the future.

## CLASS ALLEGATIONS

56. Pursuant to Fed.R.Civ.P. 23(a) and (b)(3), plaintiff brings this claim on behalf of a class, consisting of (a) all persons (b) who, on or after a date four years prior to the filing of this action (28 U.S.C. §1658), or such shorter period during which faxes were sent by or on behalf of defendant Pharmalogical, Inc. d/b/a Medical Device King, and on or before a date 20 days following the filing of this action, (c) were sent faxes by or on behalf of defendant Pharmalogical, Inc. d/b/a Medical Device King promoting its goods or services for sale (d) and which do not contain an opt out notice as described in 47 U.S.C. § 227.

57. The class is so numerous that joinder of all members is impractical. Plaintiff alleges on information and belief that there are more than 40 members of the class.

58. There are questions of law and fact common to the class that predominate over any questions affecting only individual class members. The predominant common questions include:

    a. Whether defendant engaged in a pattern of sending unsolicited fax advertisements;

    b. The manner in which defendant compiled or obtained their list of fax numbers;

    c. Whether defendant thereby violated the TCPA;

    d. Whether defendant thereby engaged in unfair acts and practices, in violation of the ICFA.

    e. Whether defendant thereby converted the property of plaintiff.

59. Plaintiff will fairly and adequately protect the interests of the class. Plaintiff has retained counsel experienced in handling class actions and claims involving unlawful business practices. Neither plaintiff nor plaintiff's counsel have any interests which might cause them not to vigorously pursue this action.

60. Plaintiff's claims are typical of the claims of the class members. All are based on the same factual and legal theories.

61. A class action is the superior method for the fair and efficient adjudication of this controversy. The interest of class members in individually controlling the prosecution of separate claims against defendant is small because it is not economically feasible to bring individual actions.

62. Several courts have certified class actions under the TCPA. Sadowski v. Med1 Online, LLC, 07 C 2973, 2008 U.S. Dist. LEXIS 41766 (N.D. Ill. May 27, 2008); Green v.

Service Master on Location Services Corp., 07 C 4705, 2009 U.S. Dist. LEXIS 53297 (N.D. Ill. June 22, 2009); CE Design v. Beaty Construction, Inc., 07 C 3340, 2009 U.S. Dist. LEXIS 5842 (N.D. Ill. Jan. 26, 2009); Hinman v. M & M Rental Ctr., 06 C 1156, 2008 U.S. Dist. LEXIS 27835 (N.D. Ill. April 7, 2008); G.M. Sign, Inc. v. Group C Communs., Inc., 08 C 4521, 2010 U.S. Dist. LEXIS 17843 (N.D. Ill. Feb. 25, 2010); Targin Sign Systems, Inc. v. Preferred Chiropractic Center, Ltd., 679 F.Supp.2d 894 (N.D. Ill. 2010); Holtzman v. Turza, 08 C 2014, 2009 U.S. Dist. LEXIS 95620 (N.D. Ill. Oct. 14, 2009); G.M. Sign, Inc. v. Finish Thompson, Inc., 07 C 5953, 2009 U.S. Dist. LEXIS 73869 (N.D. Ill. Aug. 20, 2009); CE Design v. Cy's Crabhouse North, Inc., 259 F.R.D. 135 (N.D. Ill. 2009).

63. Management of this class action is likely to present significantly fewer difficulties that those presented in many class actions, e.g. for securities fraud.

WHEREFORE, plaintiff requests that the Court enter judgment in favor of plaintiff and the class and against defendant for:

    a. Actual damages;

    b. Statutory damages;

    c. An injunction against the further transmission of unsolicited fax advertising;

    d. Costs of suit;

    e. Such other or further relief as the Court deems just and proper.

## COUNT II – ILLINOIS CONSUMER FRAUD ACT

64. Plaintiff incorporates ¶¶ 1-48.

65. Defendant engaged in unfair acts and practices, in violation of ICFA § 2, 815 ILCS 505/2, by sending unsolicited fax advertising to plaintiff and others.

66. Unsolicited fax advertising is contrary to the TCPA and also Illinois law. 720 ILCS 5/26-3(b) makes it a petty offense to transmit unsolicited fax advertisements to Illinois residents.

67. Defendant engaged in an unfair practice by engaging in conduct that is contrary to public policy, unscrupulous, and caused injury to recipients of their advertising.

68. Plaintiff and each class member suffered damages as a result of receipt of the unsolicited faxes, in the form of paper and ink or toner consumed as a result.

69. Defendant engaged in such conduct in the course of trade and commerce.

70. Defendant's conduct caused recipients of their advertising to bear the cost thereof. This gave defendant an unfair competitive advantage over businesses that advertise lawfully, such as by direct mail. For example, an advertising campaign targeting one million recipients would cost $500,000 if sent by U.S. mail but only $20,000 if done by fax broadcasting. The reason is that instead of spending $480,000 on printing and mailing his ad, the fax broadcaster misappropriates the recipients' paper and ink. "Receiving a junk fax is like getting junk mail with the postage due". Remarks of Cong. Edward Markey, 135 Cong Rec E 2549, Tuesday, July 18, 1989, 101st Cong. 1st Sess.

71. Defendant's shifting of advertising costs to plaintiff and the class members in this manner makes such practice unfair. In addition, defendant's conduct was contrary to public policy, as established by the TCPA and Illinois statutory and common law.

72. Defendant should be enjoined from committing similar violations in the future.

### CLASS ALLEGATIONS

73. Pursuant to Fed.R.Civ.P. 23(a) and (b)(3), plaintiff brings this claim on

behalf of a class, consisting of (a) all persons with Illinois fax numbers (b) who, on or after a date three years prior to the filing of this action, or such shorter period during which faxes were sent by or on behalf of defendant Pharmalogical, Inc. d/b/a Medical Device King, and on or before a date 20 days following the filing of this action, (c) were sent faxes by or on behalf of defendant Pharmalogical, Inc. d/b/a Medical Device King promoting its goods or services for sale (d) and which do not contain an opt out notice as described in 47 U.S.C. § 227.

74. The class is so numerous that joinder of all members is impractical. Plaintiff alleges on information and belief that there are more than 40 members of the class.

75. There are questions of law and fact common to the class that predominate over any questions affecting only individual class members. The predominant common questions include:

    a. Whether defendant engaged in a pattern of sending unsolicited fax advertisements;

    b. Whether defendant thereby violated the TCPA;

    c. Whether defendant thereby engaged in unfair acts and practices, in violation of the ICFA.

    d. Whether defendant thereby converted the property of plaintiff.

76. Plaintiff will fairly and adequately protect the interests of the class. Plaintiff has retained counsel experienced in handling class actions and claims involving unlawful business practices. Neither plaintiff nor plaintiff's counsel have any interests which might cause them not to vigorously pursue this action.

77. Plaintiff's claims are typical of the claims of the class members. All are based on the same factual and legal theories.

78. A class action is the superior method for the fair and efficient adjudication of this controversy. The interest of class members in individually controlling the prosecution of separate claims against defendant is small because it is not economically feasible to bring individual actions.

79. Management of this class action is likely to present significantly fewer difficulties that those presented in many class actions, e.g. for securities fraud.

WHEREFORE, plaintiff requests that the Court enter judgment in favor of plaintiff and the class and against defendant for:

    a. Appropriate damages;

    b. An injunction against the further transmission of unsolicited fax advertising;

    c. Attorney's fees, litigation expenses and costs of suit;

    d. Such other or further relief as the Court deems just and proper.

### COUNT III – CONVERSION

80. Plaintiff incorporates ¶¶ 1-48.

81. By sending plaintiff and the class members unsolicited faxes, defendant converted to its own use ink or toner and paper belonging to plaintiff and the class members.

82. Immediately prior to the sending of the unsolicited faxes, plaintiff and the class members owned and had an unqualified and immediate right to the possession of the paper and ink or toner used to print the faxes.

83. By sending the unsolicited faxes, defendant appropriated to its own use the paper and ink or toner used to print the faxes and used them in such manner as to make them unusable. Such appropriation was wrongful and without authorization.

84. Defendant knew or should have known that such appropriation of the paper and ink or toner was wrongful and without authorization.

85. Plaintiff and the class members were deprived of the paper and ink or toner, which could no longer be used for any other purpose. Plaintiff and each class member thereby suffered damages as a result of receipt of the unsolicited faxes.

86. Defendant should be enjoined from committing similar violations in the future.

## CLASS ALLEGATIONS

87. Pursuant to Fed.R.Civ.P. 23(a) and (b)(3), plaintiff brings this claim on behalf of a class, consisting of (a) all persons with Illinois fax numbers (b) who, on or after a date five years prior to the filing of this action, or such shorter period during which faxes were sent by or on behalf of defendant Pharmalogical, Inc. d/b/a Medical Device King, and on or before a date 20 days following the filing of this action, (c) were sent faxes by or on behalf of defendant Pharmalogical, Inc. d/b/a Medical Device King promoting its goods or services for sale (d) and which do not contain an opt out notice as described in 47 U.S.C. § 227.

88. The class is so numerous that joinder of all members is impractical. Plaintiff alleges on information and belief that there are more than 40 members of the class.

89. There are questions of law and fact common to the class that predominate over any questions affecting only individual class members. The predominant common questions include:

    a. Whether defendant engaged in a pattern of sending unsolicited fax advertisements;

    b. Whether defendant thereby violated the TCPA;

      c.      Whether defendant thereby committed the tort of conversion;

      d.      Whether defendant thereby engaged in unfair acts and practices, in violation of the ICFA.

      e.      Whether defendant thereby converted the property of plaintiff.

90.     Plaintiff will fairly and adequately protect the interests of the class. Plaintiff has retained counsel experienced in handling class actions and claims involving unlawful business practices. Neither plaintiff nor plaintiff's counsel have any interests which might cause them not to vigorously pursue this action.

91.     Plaintiff's claims are typical of the claims of the class members. All are based on the same factual and legal theories.

92.     A class action is the superior method for the fair and efficient adjudication of this controversy. The interest of class members in individually controlling the prosecution of separate claims against defendant is small because it is not economically feasible to bring individual actions.

93.     Management of this class action is likely to present significantly fewer difficulties that those presented in many class actions, e.g. for securities fraud.

WHEREFORE, plaintiff requests that the Court enter judgment in favor of plaintiff and the class and against defendant for:

      a.      Appropriate damages;

      b.      An injunction against the further transmission of unsolicited fax advertising;

      c.      Costs of suit;

      d.      Such other or further relief as the Court deems just and proper.

                                <u>s/ Dulijaza Clark</u>
                                Dulijaza Clark

Daniel A. Edelman
Michelle R. Teggelaar
Julie Clark
Heather A. Kolbus
EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
120 S. LaSalle Street, 18th floor
Chicago, Illinois 60603
(312) 739-4200
(312) 419-0379 (FAX)

**CERTIFICATE OF SERVICE**

      I, Dulijaza Clark, certify that on October 15, 2012, I caused a true and accurate copy of the foregoing document to be served via the Court's CM/ECF system on the following parties:

      Blaine C Kimrey
      Bryan K. Clark
      Lathrop & Gage LLP
      100 N. Riverside Plaza
      Suite 2100
      Chicago, IL 60606
      (312) 920-3304
      bclark@lathropgage.com
      bkimrey@lathropgage.com

                                                s/ Dulijaza Clark
                                                Dulijaza (Julie) Clark

Daniel A. Edelman
Cathleen M. Combs
James O. Latturner
Dulijaza Clark
EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
120 S. LaSalle Street, 18th floor
Chicago, Illinois 60603
(312) 739-4200
(312) 419-0379 (FAX)